UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CAROL PETERSON, and
RICHARD PETERSON,

CIVIL ACTION NO. 13-cv-00528-JJB-RLB

VERSUS

C.R. BARD, INC., a New Jersey
corporation, BARD PERIPHERAL
VASCULAR, INC. (a subsidiary
and/or division of defendant, C.R.
BARD, INC.), an Arizona corporation

# RULING ON MOTION FOR SUMMARY JUDGMENT

Defendants, C.R. Bard, Inc. ("Bard") and Bard Peripheral Vascular, Inc. ("Bard Peripheral"), move for this Court to grant summary judgment in its favor, dismissing the claims of Plaintiffs, Carol Peterson and Richard Peterson, arising from the use of a Bard inferior vena cava filter (doc. 57). Oral Argument is not necessary.

## I. BACKGROUND

Plaintiffs are bringing this action to recover damages arising from an allegedly defective inferior vena cava filter ("IVC filter"), a medical device inserted into the body to prevent blood clots from traveling from the patient's lower body to their heart and lungs, that was surgically placed in the body of Plaintiff, Carol Peterson. Carol Peterson's Bard G2 Filter was implanted on or around December 22, 2008. The allegedly defective IVC filter cannot be removed from Plaintiff's body without great risk to her life and therefore remains causing her severe pain and costing her significant medical expenses.

On July 26, 2012, Ms. Peterson was admitted to the hospital after presenting with right back and flank pain that had become sharp and consistent for several days. Similar pain had been

1

intermitted for several months prior. Ms. Peterson remained hospitalized for several days while tests were conducted, revealing that her IVC filter had perforated her IVC. Ms. Peterson saw several doctors during her July 2012 hospitalization. She was ultimately released on July 31, 2012 with a follow-up visit on August 14, 2012. Plaintiff's original complaint was filed in this Court on August 13, 2013 (doc. 1).

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). The admissibility of evidence for summary judgment purposes conforms to the rules of admissibility at trial. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004) (citations omitted). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Whether a fact is material will depend on the substantive law. *Id*. When addressing a summary judgment motion, the court must make reasonable inferences in favor of the nonmovant. *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000). If the movant meets his initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmovant to identify or produce evidence that establishes a genuine dispute of material fact. *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000). Rule 56(c) of the Federal Rules of Civil Procedure mandates the granting of summary judgment in any case where a party fails to make a showing sufficient to establish the existence

of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### III. LEGAL ANALYSIS

Prior to the filing of the motion for summary judgment by Defendants, Plaintiffs continue to pursue claims under the Louisiana Products Liability Act ("LPLA") for a product that is unreasonably dangerous, namely, strict products liability for failure to warn, design defects, manufacturing defect in construction/composition, and express warranty; redhibition; and loss of consortium on behalf of Plaintiff Richard Peterson (docs. 1 and 17). Defendants move for summary judgment arguing that the undisputed facts establish that Plaintiffs' claims are prescribed, and, even if they were not, Plaintiffs cannot meet their burden of proof under either the LPLA or Louisiana's Redhibition analysis (doc. 57-1, at 1-2). Plaintiffs' Opposition notifies the Court of Plaintiffs' intention to file an amended complaint withdrawing the claim of redhibitory defect (doc. 89, at 29). Therefore, the only claims remaining are those asserted under the LPLA and Mr. Richard Peterson's loss of consortium claim.

### PRESCRIPTION

First, claims asserted under the LPLA are subject to a liberative prescriptive period of one year, starting "the date the injury is sustained." La. C.C. art. 3492. Second, Mr. Peterson's loss of consortium claim is a delictual action subject to a one-year prescriptive period. As a claim derivative of the spouse's injuries, the prescriptive period is tied to the spouse's underlying injuries. *Bulot v. Intracoastal Tubular Servs., Inc.*, 04-0398 (La. App. 4 Cir. 9/29/04), 883 So. 2d 1146, 1151-52 (La. Ct. App. 2004) *writ denied*, 04-2971 (La. 3/18/05), 896 So. 2d 1003.

It is undisputed the Plaintiffs' claims under LPLA and loss of consortium are subject to a one-year prescriptive period. The parties do, however, dispute when the year began. Defendants,

as the movant, bear the initial burden at the summary judgment stage. Defendants note that where plaintiffs are not initially aware of their alleged injury or its association with the conduct of the defendants, "[t]he one year prescriptive period commences to run on the date that [the] injury party discovers or should have discovered the facts on which to base a cause of action." *Netherland v. Ethicon, Inc.*, 35,229 (La. App. 2d Cir. 4/5/02), 813 So.2d 1254, *writ denied*, 02-1213 (La. 6/21/02), 819 So. 2d 339. Specifically, in cases involving the effects of medical products, this Court has held that "[i]t is not necessary for the plaintiff to have experienced all of the symptoms, injuries or damages…for prescription to begin to run." *Guidry v. Aventis Pharmaceuticals, Inc.*, 418 F. Supp. 2d 835, 841-2 (M.D. La. 2006). In fact, it is the plaintiff/patient's knowledge of the connection between their alleged injuries and damages and the medical product that is key to the accrual of the cause of action. *Id*. at 841.

Defendants assert that the undisputed evidence shows that Plaintiffs were aware that their alleged damages had been caused by the filter, at the latest, by July 31, 2012 (doc. 57-1, at 10). Ms. Peterson was admitted into North Oaks Hospital on July 26, 2012 complaint of right flank pain and back pain. Also on July 26, 2012, the CT imaging showed struts of the Filter "poking through the right side of the inferior vena cava" (docs. 57-13, p. 1; 57-25). A number of tests were conducted on Ms. Peterson, and she was seen by a number of physicians during her July 2012 hospitalization. Ms. Peterson was then discharged from the hospital on July 31, 2012 (doc. 57-14). The discharge summary from Ms. Peterson's hospitalization states that the "[e]xtraluminal limbs of inferior vena cava filter protruding through inferior vena cava" *Id*. The discharge summary also shows that Ms. Peterson had an IVC venogram "showing IVC filter limbs extruding from [her] IVC" when she presented with right back and flank pain on July 26, 2012. *Id*. The "[w]orkup suggests complication from IVC filter placement." *Id*. Finally, the

summary states that "the patient agreed" to the proposed conservative treatment of the Filter's perforating struts, rather than undergoing open surgery. *Id.*

Each of the physicians, who treated Ms. Peterson during the July hospitalization, testified that in exercising their standard procedure with Ms. Peterson, they would have informed her that the filter had perforated her IVC, at the latest, by her discharge on July 31, 2012 (doc. 57-1, at 11). First, Dr. Cambre, Ms. Peterson's physician, testified that on July 26, 2012 he would have explained both the results of the CT imaging showing that the Filter had perforated her IVC, and that the Filter's perforation was abnormal and "rare and unusual" (doc. 57-22, p. 26:22-29:7, 30:2-31:2). Second, Dr. Iteld, Ms. Peterson's longtime physician, also testified that he and Ms. Peterson discussed the results of her CT image and that he "definitely discussed with Ms. Peterson that there were some arms or struts of [the Filter] that were sticking out through her inferior vena cava" (doc. 57-23, p. 39:17-41:1). Third, Dr. DiCorte, the physician that performed the venacavagram on Ms. Peterson, testified that he "certainly did discuss" the results of Ms. Peterson's venacavagram with her and that he is "confident" that the fact that "there were struts of Mrs. Peterson's inferior vena cava filter that were protruding from the wall of her IVC…would have been discussed with Mrs. Peterson during [her] hospitalization" (doc. 57-15, p. 61:2-11, 75:13-20). Fourth, Dr. Valdes, Ms. Peterson's treating physician, testified that prior to recommending conservative treatment for the Filter's perforating struts, he would have explained the results of the venacavagram, specifically, that the Filter's struts were perforating her IVC (doc. 57-16, p. 42:10-42:23). Dr. Valdes further testified that Ms. Peterson "would have been counseled regarding the findings [of the venogram]…and then the risk and benefit of each [treatment] decision would have been evaluated." *Id.*, at 44:8-18. Dr. Valdes continued that Ms. Peterson would not have been discharged from the hospital "without being informed of the

abnormal results concerned her IVC filter" and that it would surprise him if Ms. Peterson's recollection is that she did not learn that the Filter was perforating her IVC until several weeks after her discharge from the hospital. *Id*. at 68:2-11 and 66:24-67:11. In addition to the testimony of the treating physicians, the testimony of Plaintiff Mr. Peterson corroborates this testimony and the contents of the medical records. Mr. Peterson testified that he recalled Ms. Peterson's doctors discussing the removal of the Filter during the July 2012 hospitalization "because it was perforate [sic] or the struts were sticking out of her vena cava" (doc. 57-17, p. 29:10-30:3).

Defendants have satisfied their initial burden of showing there is no genuine dispute of material fact with regard to what Ms. Peterson should have known about the connection between her injury and damages and the filter by July 31, 2012. The filter was surgically placed in Ms. Peterson on or around December 22, 2008. When she presented with right back and flank pain at the hospital in July 2012, a series of tests were conducted during her stay. All of the treating physicians have testified about their standard procedure in informing patients about the results of test. Dr. Valdes even testified to how the hospitals procedure of discharging a patient necessitates that Ms. Peterson's would have been informed of the results of the test, which showed the filter perforating Ms. Peterson's IVC. The only reasonable inference that can be drawn from the evidence regarding the problem with the filter is that Ms. Peterson became aware of the connection between her alleged injuries and damages and the medical product, namely the filter that is essential to the cause of action, during her July 2012 hospitalization. *Guidry v. Aventis Pharmaceuticals, Inc.*, 418 F. Supp. 2d 835, at 841 (M.D. La. 2006).

The burden shifts to the nonmovant to identify or produce evidence that establishes a genuine dispute of material fact. Plaintiffs' argument is unpersuasive. Plaintiffs' burden, as the nonmovant responding to a summary judgment motion, is to identify or produce evidence that

6

establishes a genuine dispute of material fact. Plaintiff has not identified an issue of material fact that is in dispute. The only issue of fact that Plaintiffs' propose regarding when Ms. Peterson would have had knowledge of the filter's perforation is that Ms. Peterson does not recall knowledge of the filter's perforation until August of 2012. In light of the evidence presented by Defendants, it would be an unreasonable inference for this Court to find that Plaintiff could not have known of the connection between the product and her injuries and damages at the time of her discharge on July 31, 2012. Plaintiff's argues that she lacked knowledge of the specific defendant responsible for the IVC filter implanted in Ms. Peterson in 2008. Further, Ms. Peterson argues that this knowledge was necessary for prescription to begin to run. This argument is similarly unpersuasive. Prior cases that have required plaintiff know the specific defendant before prescription could begin to run also involved a causation issue where there were multiple sources of injury. Here, however, the injuries are only alleged to have come from the one filter.

Plaintiffs have failed to offer any evidence creating a material issue of fact to rebut the evidence proffered by Defendants. Therefore, the only possible conclusion from the evidence presented shows that prescription began to run, at least, by July 31, 2012, and Plaintiffs' claims filed on August 13, 2013 are prescribed.

## IV.    CONCLUSION

Plaintiffs have failed to show a genuine dispute of material fact with regard to their claims having prescribed. The movant is entitled to judgment as a matter of law. Therefore, the Court **GRANTS** the Motion (doc. 57) for Summary Judgment as filed by Defendants.

Signed in Baton Rouge, Louisiana, on May 12, 2015.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**